# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:16-cv-81676-WJZ

**Judge William J. Zloch**
**Judge Patrick M. Hunt**

| | |
|---|---|
| **ELECTRONIC COMMUNICATION TECHNOLOGIES, LLC,** | |
|     **Plaintiff,** | **PATENT CASE** |
|       **v.** | **JURY TRIAL DEMANDED** |
| **THE PEP BOYS – MANNY, MOE & JACK, d/b/a THE PEP BOYS** | |
|     **Defendant.** | |

## DEFENDANT THE PEP BOYS'
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
## AND INCORPORATED MEMORANDUM OF LAW

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF THE ISSUES ...................................................................... 1

III. BACKGROUND .............................................................................................. 1

IV.  LEGAL STANDARD ....................................................................................... 5

    A.   This case should be disposed of at the pleading stage through Rule 12(b)(6). ...................................................................................................5

    B.   The law of 35 U.S.C. § 101 ...................................................................6

V.   ARGUMENT .................................................................................................... 7

    A.   The independent claims fail both *Alice* prongs.....................................7

        1.   The independent claims are directed to an abstract idea............................7

        2.   The asserted claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter........................................11

    B.   The dependent claims of the Asserted Patents are patent-ineligible under 35 U.S.C. § 101................................................................................13

VI.  CONCLUSION................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
    728 F.3d 1336 (Fed. Cir. 2013) ............................................................................12

*Amdocs (Isr.) Ltd. v. Openet Telecom Inc.,*
    No. 2015-1180, 2016 WL 6440387 (Fed. Cir. Nov. 1, 2016)...........................................6, 12

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009) ......................................................................5

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),*
    687 F.3d 1266 (Fed. Cir. 2012) ........................................................................6, 12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................5

*Bilski v. Kappos,*
    561 U.S. 593 (2010)..........................................................................................5, 7

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.,*
    No. 6:12-cv-00951-LED, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014) ..............................12

*Cybersource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) ....................................................................6, 10, 13

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ............................................................................12

*Diamond v. Chakrabarty,*
    447 U.S. 303 (1980)..........................................................................................6

*Diamond v. Diehr,*
    450 U.S. 175 (1981)..........................................................................................7

*Eclipse IP, LLC v. McKinley Equip. Corp.,*
    No. 8:14-cv-742, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)...............................*passim*

*Electric Power Group, LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) ............................................................................8

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) ........................................................................6, 10, 12

*Fort Props., Inc. v. Am. Master Lease LLC,*
    671 F.3d 1317 (Fed. Cir. 2012) ...................................................................................7

*Fuller v. Suntrust Banks, Inc.,*
    744 F.3d 685 (11th Cir. 2007) ....................................................................................5

*Gottschalk v. Benson,*
    409 U.S. 63 (1972) ..................................................................................................6, 13

*Internet Patents Corp. v. Active Network, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015) .................................................................................12

*Lovelace v. Software Spectrum,*
    78 F.3d 1015 (5th Cir. 1996) .......................................................................................5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    132 S. Ct. 1289 (2012) ...........................................................................................6, 7, 13

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.,*
    811 F.3d 1314 (Fed. Cir. 2016) .................................................................................10

*Parker v. Flook,*
    437 U.S. 584 (1978) .....................................................................................................7

*Planet Bingo, LLC v. VKGS LLC,*
    576 Fed. Appx. 1005 (Fed. Cir. 2014) .......................................................................6

*SmartGene, Inc. v. Advanced Biological Labs, SA,*
    555 F. App'x 950 (Fed. Cir. 2014) ...........................................................................12

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) .............................................. *passim*

**Statutes**

35 U.S.C. § 101 ................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 5

Defendant The Pep Boys – Manny, Moe & Jack, d/b/a The Pep Boys ("Pep Boys"), by and through its undersigned counsel, hereby moves to dismiss the Complaint for Patent Infringement ("Complaint") in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

## I.     INTRODUCTION

The claims at issue in this case are ineligible for patentability under 35 U.S.C. § 101. In particular, the claims are materially indistinguishable from Electronic Communications Technologies, LLC's ("ECT," f/k/a Eclipse IP) claims that were invalidated in *Eclipse IP, LLC v. McKinley Equip. Corp.*, No. 8:14-cv-742, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014), as constituting nothing more than abstract ideas with no inventive concept. Like the *Eclipse* patents, the asserted claims of: U.S. Patent No. 9,373,261; U.S. Patent No. 7,876,239; and U.S. Patent No. 7,319,414 (collectively, the "Asserted Patents"), which share the same specification, are each directed to substantially the same abstract idea and include no inventive concept or meaningful limitations that would amount to significantly more than the abstract idea. The asserted claims merely cobble together generic computer components and then claim the end result of an automated notification system that is not limited to a specific non-conventional mechanism for achieving that result. Therefore, the Asserted Patents are invalid for failure to claim patent-eligible subject matter.

Resolving these issues does not require discovery or formal claim construction. Therefore, to avoid waste of judicial and party resources unnecessarily litigating invalid patents, Pep Boys requests that the Court dismiss the Complaint, with prejudice.

## II.     STATEMENT OF THE ISSUES

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept or meaningful limitations on the application of the abstract idea. The claims of the Asserted Patents are directed to the abstract ideas of ensuring trusted sources of information and enabling parties to communicate regarding a tracked item. None of the claims include an inventive concept or meaningful limitations. Should the Court therefore dismiss ECT's Complaint pursuant to Rule 12(b)(6) for failure to state a claim?

## III.     BACKGROUND

On September 4, 2014, the United States District Court for the Central District of California issued an order invalidating the asserted claims of three of ECT's patents: U.S. Patent

Nos. 7,064,681; 7,113,110; and 7,119,716 (collectively, the "*Eclipse* Patents"). *McKinley*, 2014 WL 4407592 at *1. The court found that all the asserted claims were directed to patent-ineligible subject matter. *Id.* at *12. In particular, the court found the '681 Patent was "directed to the abstract idea of asking someone whether they want to perform a task, and if they do, waiting for them to complete it, and if they do not, asking someone else." *Id.* at *7. The court found that the '716 Patent was "directed to the abstract idea of asking someone to do a task, getting an affirmative response, and then waiting until the task is done, 'while adding the words apply it with a computer.'" *Id.* at *9 (some internal quotation marks omitted). The court also found the '110 Patent was directed "to the abstract idea of asking people, based on their location, to go places." *Id.* at *11. The court further found that none of the claims included any "inventive concept." *See id.* at *7-11. The court therefore dismissed ECT's Complaint.

On September 30, 2016, ECT filed this lawsuit against Pep Boys, alleging infringement of the Asserted Patents, patents that are closely related to, result from essentially the same specification of, and are materially indistinguishable from the *Eclipse* Patents. (Dkt. No. 1 at 3-4.) In its Complaint, ECT alleges that Pep Boys infringes by "us[ing] notification systems and methods to communicate customer information (order and/or shipment information, confirmation, and notification) to a notification-receiving party." (*Id.* at 4-5.)

The '261 Patent, entitled "Secure Notification Messaging with User Option to Communicate with Delivery or Pickup Representative," is generally directed to "systems and methods that notify a party of travel status associated with one or more mobile things (MTs)." '261 Patent at 1:50-51. The '261 patent issued on June 21, 2016, with three independent claims and 27 dependent claims, all of which are directed to the idea of enabling a party to communicate with another regarding tracking an item for delivery or pickup. Independent claim 1, which is representative of the claims of the '261 Patent, covers nothing more than the abstract idea of enabling parties to communicate regarding the status of a tracked item:

> A method for an automated notification system, the method enabling secure communications, the method comprising:
> enabling a first party associated with a personal communication device (PCD) to input or select authentication information for use in connection with a subsequent notification communication session involving advance notice of a delivery or pickup of a good or service at a stop location by a mobile thing (MT);
> storing the authentication information;
> monitoring location or travel information in connection with the MT;

> causing initiation of the notification communication session to the PCD, in advance of arrival of the MT at the stop location, based at least in part upon the location or travel information associated with the MT;
>
> during the notification communication session, providing the authentication information to the PCD that indicates to the first party that the notification communication session was initiated by an authorized source; and
>
> during the notification communication session, enabling the first party to select whether or not to communicate with a second party having access to particulars of the pickup or delivery.

*Id.* at Claim 1.

The '239 Patent, entitled "Secure Notification Messaging Systems and Methods Using Authentication Indicia," is generally directed to "[s]ystems and methods . . . for notification or messaging systems that give confidence to the notification-receiving party that a notification concerning the travel status of a mobile thing is from a proper authorized source." '239 Patent at Abstract. The '239 Patent issued on January 25, 2011, with five independent claims and 56 dependent claims, all of which are directed to the idea of enabling an intended recipient of a delivery to verify whether a message comes from a trusted source. Independent claim 1, which is representative of the claims in the '239 Patent, covers (1) allowing a party to provide authentication information (*e.g.*, a password, passcode, or identification information such as a mailing address or email address); (2) storing that information; (3) tracking a mobile item to be delivered or picked up; (4) contacting the party regarding the item; and (5) providing the party with the stored authentication information so that the party knows the contacting party is authorized:

> A method for a computer-based notification system, comprising:
>
> enabling a party to provide or select authentication information for use in connection with a notification communication session involving a delivery or pickup task associated with a mobile thing;
>
> storing the authentication information;
>
> monitoring travel data associated with a mobile thing;
>
> initiating the notification communication session with a personal communications device associated with the party;
>
> providing the stored authentication information to the personal communications device that indicates to the party that the notification communication session was initiated by an authorized source.

*Id.* at Claim 1.

The '414 Patent, entitled "Secure Notification Messaging Systems and Methods Using Authentication Indicia," is generally directed to "[s]ystems and methods . . . for notification or

messaging systems that give confidence to the notification-receiving party that a notification concerning the travel status of a mobile thing is from a proper authorized source." '414 Patent at Abstract. The '414 Patent issued on January 15, 2008, with four independent claims and 40 dependent claims, all of which are directed to the idea of enabling an intended recipient of a delivery to verify whether a message comes from a trusted source. Independent claim 1, which is representative of the claims in the '414 Patent, covers (1) tracking a mobile item to be delivered or picked up; (2) sending a notification regarding delivery or pickup of the mobile item to a party; (3) providing the party with authentication information, where such authentication information is, at minimum, a link to the Internet, so that the party knows that the contacting party is authorized; and (4) allowing the party to click the link to verify the authenticity of the notification and/or of the authentication information:

> A method for a computer-based notification system, comprising:
> monitoring travel data associated with a mobile thing;
> communicating a notification communication involving a delivery or pickup task associated with the mobile thing to a personal communications device associated with a party;
> providing authentication information with the notification communication, the authentication information comprising at least a link to the Internet; and
> enabling the party to select the link to communicate over the Internet to verify the authenticity of the notification communication and/or of the authentication information.

*Id.* at Claim 1.

Like the related *Eclipse* Patents, the claims of the Asserted Patents recite only general purpose computer components programmed in a conventional way to perform the claimed abstract ideas, adding only the purported limitations relating to tracking "a mobile thing." Specifically, in the '239 Patent, independent claims 1, 16, and 31 are directed to "computer-based notification system[s]," while independent claims 39 and 54 are directed to "computer system[s]" that include "a memory" and "a processor." Similarly, all of the '414 Patent's claims are directed to a "computer-based notification system." '414 Patent at Claims 1, 12, 23, 34. The '261 Patent's claims refer only to "an automated notification system." '261 Patent at Claims 1, 11, 21. According to the '261 Patent, a "mobile thing (MT)" could be anything like "a bus, automobile, truck, train, ship, plane, aircraft, etc." *Id.* at 1:53-59. A "personal communication device" can be "a personal computer (PC) capable of displaying the notification through e-mail or some other communications software, a television, a wireless (e.g., cellular, satellite, etc.) or

non-wireless telephone, a pager, a personal data assistant, a navigation system in a motor vehicle, a radio receiver or transceiver, or any other device capable of notifying the user with some type of user perceptible emission." *Id.* at 19:35-41. These terms refer to generic, conventional means capable of use to implement abstract ideas.

Therefore, the Court should grant this motion and dismiss ECT's claims under § 101 for failure to state a claim upon which relief can be granted.

## IV.   LEGAL STANDARD

### A.   This case should be disposed of at the pleading stage through Rule 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted). In deciding a Rule 12(b)(6) motion, courts consider documents attached to or incorporated into the complaint as well as facts alleged in the complaint. *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996); *see Fuller v. Suntrust Banks, Inc.*, 744 F.3d 685, 695-96 (11th Cir. 2007) (noting that generally courts "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss [under Rule 12(b)(6)]" (quotation omitted)).

Although factual allegations are taken as true, legal conclusions are given no deference— those matters are left for the court to decide. *See Iqbal*, 556 U.S. at 678 (Tenet that allegations are taken as true on a motion to dismiss "is inapplicable to legal conclusions."). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citations and internal quotations omitted). Thus, "resolving subject matter eligibility at the outset provides a bulwark against vexatious infringement suits." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring).

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is

apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial,* 772 F.3d at 718-19 (Mayer, J., concurring). Claim construction is not required to conduct a § 101 analysis. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B.     The law of 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law specifically recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and ***abstract ideas***." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980) (emphasis added). "[A]bstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

Determining whether a patent claim impermissibly claims an abstract idea involves two steps: First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice*, 134 S. Ct. at 2355. Second, if the claim contains such an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).  The analysis requires, especially during the first step, that the claim at issue be compared to claims with a "similar or parallel descriptive nature" that have been analyzed in previous cases. *Amdocs (Isr.) Ltd. v. Openet Telecom Inc.*, No. 2015-1180, 2016 WL 6440387, at *4-5 (Fed. Cir. Nov. 1, 2016) ("We begin, then, with an examination of eligible and ineligible claims of a similar nature from past cases."). This is known as the "classic common law methodology." *Id.* at *5.

Transformation of an idea into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Alice*, 134 S. Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)).  In the context of computer-related technology, a claim must be directed to a specific "improvement in computer capabilities" rather than "an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).  Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *see*

*also Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1008 (Fed. Cir. 2014) ("[N]ot only can these steps be carried out in existing computers long in use,' but they also can be 'done mentally.'" (citation omitted)).

In addition, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 610-11; *Diamond v. Diehr*, 450 U.S. 175, 191-92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

## V.     ARGUMENT

ECT's Complaint should be dismissed.  The claims of the Asserted Patents are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test.  The asserted claims are directed to the abstract ideas of ensuring trusted sources of information and enabling parties to communicate regarding a tracked item. Abstract ideas are not eligible for patenting. None of the asserted claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Moreover, the claims are materially indistinguishable from the *Eclipse* Patents that were invalidated in *McKinley*. 2014 WL 4407592 at \*12. The claims of the Asserted Patents cover similarly abstract ideas, adding only the purported limitations relating to tracking "a mobile thing." These limitations, however, do not sufficiently distinguish the Asserted Patents from the patents invalidated in *McKinley* for them to be patent eligible. Because ECT has failed to state a claim upon which relief may be granted, Pep Boys respectfully requests that the Court grant its motion and dismiss this case with prejudice.

### A.     The independent claims fail both *Alice* prongs.

#### 1.     The independent claims are directed to an abstract idea.

In determining patent eligibility under § 101, the court must first determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2355. Here, the claims of the Asserted Patents are directed to the abstract ideas of ensuring trusted sources of information and enabling

parties to communicate regarding tracked items. Indeed, "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

The abstract nature of the Asserted Patents is clear when one focuses on the claim language that remains after stripping out the generic computer "tools" (i.e., the "personal communication device" and "Internet"). Viewing the limitations of Claim 1 of the '261 Patent alongside a conventional analogy in the context of pizza delivery highlights the abstract nature of the claims:

| '261 Patent Claim 1 | |
|---|---|
| **Claim Limitations** | **Conventional Analogy "Delivering a Pizza"** |
| "enabling a first party ~~associated with a personal communication device (PCD)~~ to input or select authentication information for use in connection with a subsequent notification communication session involving advance notice of a delivery or pickup of a good or service at a stop location by a mobile thing (MT)" | providing order information (*e.g.*, an order number) to a pizza delivery person for use when discussing the status of a pizza to be delivered by the delivery person in his delivery truck |
| "storing the authentication information" | storing the order information |
| "monitoring location or travel information in connection with the MT" | tracking the delivery truck that is to deliver the pizza |
| "causing initiation of the notification communication session ~~to the PCD~~, in advance of arrival of the MT at the stop location, based at least in part upon the location or travel information associated with the MT" | sending the delivery person a communication (e.g., a text) before the delivery truck arrives at the customer's delivery address |
| "during the notification communication session, providing the authentication information ~~to the PCD~~ that indicates to the first party that the notification communication session was initiated by an authorized source" | including the order number in the communication (e.g., the text) to the delivery person, thus indicating to the delivery person that this communication (e.g., this text) came from a trusted source (e.g., the pizza place) |
| "during the notification communication session, enabling the first party to select whether or not to communicate with a second party having access to particulars of the pickup or delivery" | including in the communication to the delivery person the phone number of the customer so that the delivery person can contact the customer (e.g., if nobody answers the door at the delivery address) |

The same is true of Claim 1 of the '239 Patent when viewed in the same context:

| '239 Patent Claim 1 | |
|---|---|
| **Claim Limitations** | **Conventional Analogy "Delivering a Pizza"** |
| "enabling a party to provide or select authentication information for use in connection with a notification communication session involving a delivery or pickup task associated with a mobile thing" | providing order information (*e.g.*, an order number) for use when discussing the status of a pizza to be delivered |
| "storing the authentication information" | storing the order information |
| "monitoring travel data associated with a mobile thing" | tracking the pizza |
| "initiating the notification communication session ~~with a personal communications device associated with the party~~" | calling the person who ordered the pizza |
| "providing the stored authentication information ~~to the personal communications device~~ that indicates to the party that the notification communication session was initiated by an authorized source" | providing the order information to the person who ordered the pizza |

The same is true of Claim 1 of the '414 Patent when viewed in the same context:

| '414 Patent Claim 1 | |
|---|---|
| **Claim Limitations** | **Conventional Analogy "Delivering a Pizza"** |
| "monitoring travel data associated with a mobile thing" | tracking the pizza |
| "communicating a notification communication involving a delivery or pickup task associated with the mobile thing to a ~~personal communications device associated with a~~ party" | sending the customer a communication (*e.g.*, a text) related to the delivery of the pizza |
| "providing authentication information with the notification communication~~, the authentication information comprising at least a link to the Internet~~" | including in the communication to the customer the order number as a clickable link to the Internet |
| "enabling the party to ~~select the link to~~ communicate ~~over the Internet~~ to verify the authenticity of the notification communication and/or of the authentication | allowing the customer to click the link, which, when clicked, allows the customer (1) to verify the authenticity of the notification regarding the pizza's delivery status; and/or |

| information" | (2) to verify whether the order number is correct (e.g., whether the order number correlates to the customer's address or type of pizza ordered) |
|---|---|

The remaining independent claims cover only the systems or apparatuses for performing the same abstract methods. At a high level, the independent claims amount to nothing more than methods for parties to communicate regarding the status of a tracked item, including either allowing a party to confer with another party regarding a tracked item ('261 Patent) or authenticating the source of the communication ('239 Patent; '414 Patent).

But ensuring trusted sources of information and enabling parties to communicate regarding tracked items are abstract ideas that can be implemented in a variety of ways, including (as shown above) by a human. The claims are thus directed to patent-ineligible subject matter. *See CyberSource*, 654 F.3d at 1372 (claim for verifying the validity of a credit card transaction over the Internet abstract because the "steps can be performed in the human mind, or by a human using a pen and paper"); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (claims for computer-implemented system to enable borrowers to anonymously shop for loan packages abstract where "[t]he series of steps covered by the asserted claims . . . could all be performed by humans without a computer").

Recent Federal Circuit case law underscores the abstractness of the idea to which the Asserted Patents are drawn. In *Enfish*, for example, the claims at issue were directed to a particular type of "self-referential" database. *Enfish*, 822 F.3d at 1329, 1338. The court distinguished the claims from others that "simply add[ed] conventional computer components to well-known business practices," holding instead that "they [we]re drawn to a specific improvement to the way computers operate." *Id.* at 1336. In particular, the unconventional structure of the database resulted in "increased flexibility, faster search times, and smaller memory requirements." *Id.* at 1337. Unlike *Enfish*, nothing in the claims of the Asserted Patents shows any unconventional methodology that would amount to a "specific improvement in the way computers operate." Indeed, the only "computer related" components recited are generic and conventional; all are implemented in a conventional manner with no special programming or algorithm identified.

The broad concept of "ensuring trusted sources of information and enabling parties to communicate regarding tracked items" is therefore patent ineligible because it "recite[s] an

abstraction—an idea, having no particular concrete or tangible form." *Ultramercial*, 772 F.3d at 715. And because they are materially indistinguishable from the *Eclipse* Patents—save the additional limitation of tracking "a mobile thing" (which in itself is abstract for the reasons discussed), the claimed processes are just as undeserving of protection.

> **2. The asserted claims contain no inventive concept to transform the abstract idea into patent-eligible subject matter.**

Because the Asserted Patents are directed to an abstract idea, the Court must next determine whether the claims contain an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, the claims "must include additional features" which "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotations and citations omitted). Here, the independent claims include no inventive concept, nor do they not recite any meaningful limitations that would render them patent-eligible. *McKinley*, 2014 WL 4407592, at *7 (finding that ECT's claims capture an abstract concept "without any 'inventive concept' or other limiting principle"). Indeed, the stated problem the Asserted Patents purport to solve is simply "to know, with substantial accuracy, the expected arrival or departure time of a" mobile vehicle or "thing," a concept that is far from inventive.

The lack of inventive concept is underscored by the Asserted Patents' description (and depiction) of only off-the-shelf computer components that perform conventional tasks in a conventional manner to implement the abstract idea. *See, e.g.*, '261 Patent at Fig. 2 (depicting a generic interface connected to generic components, including "input device," "display," "disk," "printer," "sensor," and "processing element"); '239 Patent at Fig. 2 (same); '414 Patent at Fig. 2 (same). Notably, the *McKinley* court discussed the broad sweeping nature of the specification when invalidating the related *Eclipse* Patents. In particular, it recognized that "[t]he specification teaches in one place that a personal communications device is a broad category that includes telephones, pagers, computers, and personal data assistants." *McKinley*, 2014 WL 4407592, at *6. The court also pointed out that "in another [place], the specification is even more expressly sweeping":

> Nonlimiting examples of PCDs are as follows: a personal computer (PC) capable of displaying the notification through e-mail or some other communications software, a television, a wireless (e.g., cellular, satellite, etc.) or non-wireless telephone, a pager, a personal data assistant, a navigation system in a motor

> vehicle, a radio receiver or transceiver, or any other device capable of notifying the user with some type of user perceptible emission.

*Id.* at *7 (quoting the specification of the *Eclipse* Patents). The Asserted Patents, which share the same specification, include the same sweeping statements and thus have the same issues identified by the court in *McKinley*. '261 Patent at 19:35-42 (same); '239 Patent at 18:46-53 (same); '414 Patent at 19:15-22 (same).

The mere automation and efficiency permitted by performing the abstract ideas on a generic computer does not bring the claims into the realm of eligibility. *Alice*, 134 S. Ct. at 2358; s*ee also Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-00951-LED, 2014 WL 923280, at *4 (E.D. Tex. Jan. 21, 2014). The Asserted Patents merely claim the task of communicating regarding a tracked item and add some "apply it" language: namely, the use of a generic computer system to perform the claimed processes. To be sure, the asserted claims' recitation of "computer-based" systems, "a processor," a "personal communication device," and "a memory" is not functionally different from reciting just a "computer" because such components are not "new machinery." *SmartGene, Inc. v. Advanced Biological Labs, SA*, 555 F. App'x 950, 955 (Fed. Cir. 2014); *see also McKinley*, 2014 WL 4407592, at *8 ("And even if [the inventor] was the first to discover the idea that you could use a computer system and a telephone to ask people whether they wanted to perform a task, those devices are generic and ubiquitous, and in the modern world, reciting them does not overcome the abstractness problem.").

There simply is no specific non-conventional application of the idea, as the claims contain no restrictions on how to implement the idea. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (affirming invalidity where the claim "contains no restriction on how the result is accomplished" and where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation"). Nor do the steps of the asserted claims "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, for example by disclosing an "improved, particularized method of digital data compression," *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014), by improving "the way a computer stores and retrieves data in memory," *Enfish*, 822 F.3d at 1339, or by improving "scalability and efficiency" of an accounting records system, *Amdocs*, 2016 WL 6440387, at *14.

When the "insignificant computer-based limitations are set aside from those claims that contain such limitations, the question under § 101 reduces to an analysis of what additional features remain in the claims." *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (quoting *Bancorp*, 687 F.3d at 1279 (holding claims patent-ineligible even when the specification "contains very detailed software implementation guidelines" because "the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer")). In this case, all that is left once the off-the-shelf components are stripped away are the abstract ideas of "ensuring trusted sources of information and enabling parties to communicate regarding tracked items."

The Asserted Patents' claims recite an abstraction or idea having no particular concrete or tangible form. Without any meaningful limitations, the Asserted Patents preempt the abstract ideas of "ensuring trusted sources of information and enabling parties to communicate regarding tracked items" and violate "the longstanding rule that '[a]n idea of itself is not patentable.'" *Benson*, 409 U.S. at 67 (quotation omitted). The claims thus fail *Alice's* second prong.

**B.      The dependent claims of the Asserted Patents are patent-ineligible under 35 U.S.C. § 101.**

The dependent claims also fail to recite patent-eligible subject matter and thus fail both *Alice* prongs. In addition to being directed to abstract ideas, these dependent claims do nothing more than include patent ineligible extra-solution activity like data-gathering (*compare* '261 Patent, cls. 4-10 *with CyberSource*, 654 F.3d at 1372 (data gathering not meaningful limitation)), or additional conventional computer activity, like establishing a connection between two PCs (*compare* '261 Patent, cls. 2, 3 *with Mayo*, 132 S. Ct. at 1298 (extra-solution activity not meaningful activity)), in order to explain some relatively narrower possibilities of what the overly broad independent claims could cover.

Just like the independent claims, their abstractness can be highlighted by conventional analogies:

| '261 Patent | |
|---|---|
| **Dependent Claim** | **Conventional Analogy "Delivering a Pizza"** |
| 2. The method of claim 1, further comprising, based upon a selection by the first party, causing communicative coupling between the PCD of the first party and a communications | connecting the phone call between the pizza delivery person and the person who ordered the pizza |

| | |
|---|---|
| device associated with the second party having access to particulars of the pickup or delivery. | |
| 3. The method of claim 1, further comprising, based upon a selection by the first party, causing communicative coupling between the PCD of the first party and a second PCD associated with the MT or the second party in the MT. | same as Claim 2, but adding the generic "personal communication device" |
| 4. The method of claim 1, further comprising, during the notification communication session, providing a purchase order. | providing some identifying information for the pizza delivery order |
| 5. The method of claim 4, further comprising enabling the first party to select another option that indicates to the notification system that the purchase order is proper. | allowing a party to select how to verify whether the pizza delivery order is legitimate |
| 6. The method of claim 1, wherein the particulars include a reason why the mobile thing is to stop at the stop location. | the pizza delivery person and the person who ordered the pizza both know the destination of the pizza |
| 7. The method of claim 1, further comprising changing information in a work order based at least in part upon communication between the first and second parties. | enabling the parties to modify the pizza order |
| 8. The method of claim 1, wherein the authentication information includes a telephone number that can be called or a link that can be selected to verify authenticity of the notification communication session. | including in the order information a telephone number that can be called or a generic link over the Internet that can be clicked in order to verify the accuracy of the order |
| 9. The method of claim 1, wherein the authentication information comprises at least one of the following: a password, a symbol, a text and/or numeric code, a sound, a music segment, a distinctive ring, a video, or an image. | providing order information—e.g., an order number—where the order information is made of one or more of the following: a password, symbol, letter, number, sound, music segment (e.g., the pizzeria's name as spoken in ads, online or in commercials), ring, video, or image (e.g., an image of the type of pizza that was ordered) |
| 10. The method of claim 1, wherein the authentication information is an image or video of the MT, a person or thing in the MT, or something outside of the MT. | including an image or video of the pizza in the order information/confirmation, of each topping ordered, or of *absolutely anything* |
| Remaining Dependent Claims | The remaining dependent claims correspond to the claims above in the context of an "automated notification system" |

The same is true of the '239 Patent and '414 Patent's dependent claims:

| '239 Patent Dependent Claim | '414 Patent Dependent Claims | Conventional Analogy "Delivering a Pizza" |
|---|---|---|
| 2. The method of claim 1, further comprising the step of enabling the party to contact the system with the personal communications device or another communications device and define the authentication information. | 2. The method of claim 1, further comprising the step of enabling the party to contact the system and define the authentication information prior to the communicating step. | calling the store or the delivery person to provide the pizza order information (*e.g.*, an order number) |
| 3. The method of claim 1, wherein the engaging step is performed when the mobile thing is a predetermined proximity with respect to a stop location, another predetermined location, or a geographic region. | 3. The method of claim 1, wherein the step of communicating the notification is performed when the mobile thing is a predetermined proximity with respect to a stop location. | initiating the call with the person who ordered the pizza when the delivery person is close to the delivery location |
| 4. The method of claim 1, wherein the steps are performed with a single computer system, a plurality of computer systems that are communicatively coupled, or a computer system having a distributed architecture. | 4. The method of claim 1, wherein the steps are performed with a single computer system, a plurality of computers that are communicatively coupled, or a computer system having a distributed architecture. | performing the steps using a single general purpose computer, multiple general purpose computers, or a general purpose, distributed computer system |
| 5. The method of claim 1, further comprising the step of enabling the party to select a link to communicate over the Internet to verify the authenticity of the notification communication session and/or the authentication information. | 5. The method of claim 1, further comprising the steps of providing another link to the Internet and enabling the party to select the link to view an image or video captured on or of the mobile thing. | providing the order information via a generic link over the Internet |
| | 6. The method of claim 1, wherein the authentication information further comprises at least one of the following: a symbol, a text or numeric code, a sound, music, a distinctive ring, or an image of a signature. | providing an order number that includes symbols, letters, or numbers or providing an order number with a generic link to the internet that, when clicked or when linked to the pizzeria website, makes a particular noise or shows an image of the name of the pizzeria in cursive-type |

| | 7. The method of claim 1, wherein the authentication information is defined by the computer-based notification system and is made known to the party prior to the communicating step. | indicating to the person ordering the pizza that he/she will be able to check his/her order using a generic link over the Internet |
|---|---|---|
| 6. The method of claim 1, further comprising the step of enabling the party to verify whether an arriving mobile thing is the mobile thing that is authorized for the delivery or pickup task by: receiving an image from the personal communications device; comparing the image with a stored image; and communicating a message back to the personal communications device, the message indicating a match or mismatch. | 8. The method of claim 1, further comprising the steps of: receiving an image from the personal communications device; comparing the image with a stored image; and communicating a message back to the personal communications device, indicating a match or a mismatch. | providing the delivery person with a picture of the pizza to be picked up or delivered, and enabling the delivery person to confirm whether the pizza matches the picture |
| 7. The method of claim 1, further comprising the step of enabling the party to verify whether an arriving mobile thing is the mobile thing that is authorized for the delivery or pickup task by: receiving a code from the personal communications device; comparing the code with a stored code; and communicating a message back to the personal communications device, the message indicating a match or mismatch. | 9. The method of claim 1, further comprising the steps of: receiving a code from the personal communications device; comparing the code with a stored code; and communicating a message back to the personal communications device, indicating a match or a mismatch. | same as Claim 6 of the '239 Patent but using a code rather than a picture |
| 8. The method of claim 1, wherein the providing step is performed before, during, or after the initiating step. | | providing the order information before, during, or after beginning the conversation with the person who ordered the |

| | | pizza |
|---|---|---|
| 9. The method of claim 1, wherein the steps are performed by computer software residing on a non-transitory computer readable medium or media. | | performing the steps using generic computer software residing on generic computer media |
| 10. The method of claim 1, wherein authentication information comprises a telephone number and wherein the telephone number corresponds to a communications device situated on the mobile thing. | | using the customer's telephone number as the order information |
| 11. The method of claim 1, wherein authentication information comprises a telephone number and wherein the telephone number corresponds to a verification entity. | | same as Claim 10 of the '239 Patent |
| 12. The method of claim 1, wherein the authentication information is an image or video of the mobile thing, a person or thing in the mobile thing, or something outside of the mobile thing. | 10. The method of claim 1, further comprising the step of communicating an image or a video of the mobile thing, a person or thing in the mobile thing, or something outside of the mobile thing to the personal communications device. | using an image or video as the order information, where the image or video is of ***absolutely anything*** |
| 13. The method of claim 1, further comprising the step of receiving a response from the personal communications device to cancel, reschedule, or modify the delivery or pickup task. | 11. The method of claim 1, further comprising the step of providing a link to the Internet that enables the party to provide a response indicating at least one of the following: that the party wishes to cancel the delivery or pickup task or that the party wishes to reschedule the delivery or pickup task. | enabling the person who ordered the pizza to cancel, reschedule, or modify the delivery of the pizza |
| 14. The method of claim 1, further comprising the step of enabling the party to provide or select a communication | | allowing the person ordering the pizza to select how they would like to be communicated with (*e.g.,* |

| | | |
|---|---|---|
| method associated with the notification communication session. | | phone call, text message, e-mail) |
| 15. The method of claim 14, wherein the communication method is a telephone, a text, or an email communication. | | communicating via phone, text, or e-mail |
| Remaining Dependent Claims | Remaining Dependent Claims | The remaining dependent claims correspond to the claims above in the context of a "computer-based notification system" or a "computer system" |

In the end, the claims of the Asserted Patents are, from top to bottom, an abstraction implemented in a conventional way on a generic computer with conventional components and nothing more. Any additional limitations, as discussed above, are likewise conventional abstract steps that have long been carried out both manually and electronically. The claims do not improve on any technology process or even require any specialized computer or server and thus evince no inventive concept. As a result, the claims must fail under *Alice*.

## VI.     CONCLUSION

Because the Asserted Patents' claims do not embrace patentable subject matter under § 101, Pep Boys respectfully requests that the Court dismiss this case with prejudice for failure to state a claim upon which relief can be granted.

Dated: November 18, 2016

Respectfully submitted,

By:  /s/ Eleanor T. Barnett

Eleanor T. Barnett, Esq.
Florida Bar No. 0355630
Heller Waldman P.L.
3250 Mary Street, Suite 102
Coconut Grove, FL  33133
Phone: 305-448-4144
Fax:  305-448-4155
ebarnett@hellerwaldman.com;
liteservice@hellerwaldman.com;
ncuriel@hellerwaldman.com


Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
Ricardo J. Bonilla
rjb@fr.com
Texas Bar No. 24082704
Theresa M. Dawson
tdawson@fr.com
Texas Bar No. 24065128

FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)

**COUNSEL FOR DEFENDANT
THE PEP BOYS – MANNY, MOE & JACK,
d/b/a THE PEP BOYS**


## <u>CERTIFICATE OF SERVICE</u>

**WE HEREBY CERTIFY** that a true and correct copy has been electronically filed using the CM/ECF filing system, which automatically send email notifications to all counsel of record and which will permit viewing and downloading of same from the CM/ECF system.


/s/Eleanor T. Barnett
Eleanor T. Barnett, Esq.